IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15–cv–00496–RM–KMT

NANCI CHRISTEN-LOPER, a Colorado resident,

    Plaintiff,

v.

BRET'S ELECTRIC, LLC, a Colorado corporation,

    Defendant.

___

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
___

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on Defendant's "Motion to Partially Dismiss Complaint" (Doc. No. 8 ["Mot."], filed May 18, 2015). Plaintiff has filed a response (Doc. No. 16 ["Resp."], filed June 18, 2015), to which Defendant has replied. (Doc. No. 29 ["Reply"], filed July 13, 2015).

### STATEMENT OF THE CASE

    This lawsuit arises out of Plaintiff's employment with and subsequent termination from Defendant. (*See generally* Doc. No. 1 ["Compl."].) By this action, Plaintiff asserts that Defendant violated the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-301, *et seq.* She also asserts a claim for wrongful discharge in violation of Colorado public policy and intentional infliction of emotional distress. Defendant moves to dismiss the latter two claims.

## LEGAL STANDARD

*Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotations omitted).

## ANALYSIS

**1. Public Policy Wrongful Discharge Claim**

Defendant contends that Plaintiff's public policy wrongful discharge claim is barred by the existence of a statutory remedy under CADA. In her Complaint, Plaintiff predicates her wrongful discharge claim entirely on CADA (Compl. at ¶ 44). However, no wrongful discharge claim may lie when the statute on which it is premised already provides a remedy for

3

discriminatory or retaliatory discharge. *See generally Basile v. Missionary Sisters of Sacred Heart of Jesus-Stella Maris Province*, No. 11–cv–01827– REB–KMT, 2011 WL 5984752, at *2 (D. Colo. Nov. 30, 2011) (claim for wrongful discharge in violation of public policy preempted by ADEA and finding "where a statute already provides a remedy for wrongful termination, the tort is unavailable, as the courts in this district have unanimously concluded"); *Caspar v. Lucent Tech., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003) ("Given the availability of Caspar's Title VII remedies, therefore, Colorado authority indicates the wrongful discharge claim is not available."); *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003) (employee could not base wrongful discharge claim on the FMLA because the FMLA provided retaliatory discharge remedy); and *Gamble v. Levitz Furniture Co. of the Midwest*, 759 P.2d 761, 766 (Colo. App. 1988) (holding no public policy claim is available where statute in question provides employee with wrongful discharge remedy).

Here, Plaintiff alleges Defendant discharged her in retaliation for "exercising important job related rights by requesting time off to visit her doctor, by taking intermittent and short-term medical leave, and by invoking her statutory right to reasonable accommodation." (Compl. at ¶ 42.)  CADA already provides a remedy for discrimination based on disability and retaliation. *See* Colo. Rev. Stat. §§ 24-34-402.  Moreover, Plaintiff asserts a separate claim under CADA. (Compl. at ¶¶ 33-41.)

In support of her argument that CADA does not bar her wrongful discharge claim, Plaintiff relies heavily on the Colorado Supreme Court's decision in *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66 (Colo. 1995).  In *Brooke*, an employee claiming to have been sexually harassed

brought a claim for wrongful discharge in violation of public policy (with the public policy in question apparently being that embodied by CADA), as well as a claim for tortious interference with contract (in that her immediate supervisor interfered with her employment contract with the employer). *Id.* at 67. The trial court eventually granted summary judgment to the employer on all claims. *Id.* On appeal, the employee "contested only the grant of summary judgment on her tortious interference claim," and the Court of Appeals affirmed. *Id.* The Colorado Supreme Court granted *certiorari* on "whether...[CADA] provides an exclusive remedy." *Id.* at n.1. The Court held "that [CADA] does not provide an exclusive remedy for sex discrimination claims." *Id.* at 70.

In *Gatuma v. Encore Elec., Inc.*, No. 12-cv-01611-MSK-MEH, 2012 WL 5354932, at *3 (D. Colo. Oct. 30, 2012), District Judge Marcia S. Krieger stated that "cases such as *Gamble*, *Krauss*, and others, decided both before and after *Brooke*, address th[is] issue squarely and conclude that preemption is appropriate." *Gatuma*, 2012 WL 5354932, at *5. Judge Krieger explained her reasoning in adopting the *Gamble* line of cases. *Id.* First, Judge Krieger explained that "*Brooke* involved consideration of the interaction between CADA and a claim for tortious interference with contract, not a claim for wrongful discharge in violation of public policy." *Id.* at *3. Judge Krieger reasoned that a discrimination claim, such as the claim for tortious interference with a contract in *Brooke,* brought against an individual supervisor necessarily falls outside the reach of CADA because, unlike a CADA claim, a tortious interference claim can lie against a defendant other than the employer. *Id.* Judge Krieger also reasoned that "a claim for wrongful discharge predicated on a public policy of non-discrimination is indistinguishable from

a statutory CADA claim of discrimination," whereas "[t]he same cannot be said for a claim of tortious interference." *Id.*

Second, Judge Krieger explained that "the analysis in *Brooke* involved an older, less-expansive version of CADA" that did not "provide redress to an employee for discriminatory conduct that does not result in an employment-related decision affecting the employee's pay, status, or tenure [*i.e.*, hostile environment sexual harassment]." *Id.* at *4 (citing *Brooke*, 906 P.2d at 68 [citing Colo. Rev. Stat. § 24-34-402(1)(a)].) Judge Krieger reasoned that, in 1999, the Colorado legislature amended § 24-34-402(1)(a) to expressly provide that it was also unlawful for an employer "to harass" employees "based upon an individual's...sex." *Id.* "Thus, to the extent that the result in *Brooke* was driven by the fact that CADA offered no relief to the employee for the type of conduct her supervisor inflicted, that is no longer the case." *Id.*

Finally, Judge Krieger noted that "a central premise of *Brooke* is that CADA 'does not provide a comprehensive scheme for addressing sex discrimination in the workplace.'" *Id.* (quoting *Brooke*, 906 P.2d at 70). Judge Krieger explained that "by failing to acknowledge the ability of an employee to bring a civil suit sounding in violation of CADA's non-discrimination requirement, the Court in *Brooke* appears to have somewhat understated the 'comprehensiveness' of CADA's enforcement provisions." *Id.* at *5. Judge Krieger determined *Brooke* did not clearly and unambiguously make a finding that a tort-based clone of a statutory CADA claim may co-exist. *Id.*

This court agrees with Judge Krieger's reasoning and also finds the *Gamble* line of cases, which conclude that a CADA claim bars a claim for wrongful discharge, to be more persuasive.

### 2. Intentional Infliction of Emotional Distress

Defendant argues that Plaintiff's allegations are insufficient to support her claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, a plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer emotional distress." *McCarty v. Kaiser–Hill Co., LLC*, 15 P.3d 1122, 1126 (Colo. App. 2000). As to the first element,

> [T]he level of outrageousness required to create liability for intentional infliction of emotional distress is extremely high: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

A claim of unlawful discrimination alone does not support a claim for intentional infliction of emotional distress. *Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo. App. 1996) (addressing a disability claim under CADA). Indeed, to hold that every discrimination claim—whether based on race, national origin, religion, sex, age, or disability—automatically constituted outrageous conduct would stretch the tort far beyond its intended boundaries. *Id.* Instead, a discriminatory employment action will rise to the level of outrageous conduct only where the manner of discharge was outrageous. *Id.*

Here, Plaintiff alleges that she suffers from bi-polar disorder and that Defendant was aware of the same. (Compl. at ¶ 11.) Plaintiff's Complaint includes allegations that during a

7

period of time Defendant was aware Plaintiff was struggling with her disorder, one of the Defendant's co-owners yelled, cursed and threw things at Plaintiff, angrily hit a wall while standing over her, disciplined her for missing work in order to see her psychiatrist and prohibiting her from doing so. (Compl. at ¶¶ 13, 16-19.) These events culminated with Defendant delivering a letter to Plaintiff's home terminating her employment at the same time they were aware she was being held in Highlands Behavioral Health Hospital on a 72-hour suicide watch. (Compl. at ¶ 21-23.) Based on this evidence, which at this stage the court must construe as a true and accurate portrayal of the events underlying this action, *see Hall*, 935 F.2d at 1198, the court finds that a reasonable person could conclude Defendant's conduct exceeded the bounds of decency. *See Archer v. Farmer Bros. Co.*, 70 P.3d 495, 500 (Colo. App. 2002) (finding that the plaintiff's intentional infliction of emotional distress claim should be presented to the jury where evidence showed that the defendant entered the plaintiff's home to terminate his employment while he was recuperating from a heart attack).

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that Defendant's "Motion to Partially Dismiss Complaint" (Doc. No. 8) be **GRANTED** in part. Plaintiff's claim for wrongful discharge in violation of Colorado public policy should be dismissed. Plaintiff's claim for intentional infliction of emotional distress should proceed.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of February, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

10