**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-00496-RM-KMT

NANCI CHRISTEN-LOPER,

    Plaintiff,

v.

BRET'S ELECTRIC, LLC,

    Defendant.

_____

**OPINION AND ORDER**
_____

On March 9, 2015, plaintiff Nanci Christen-Loper ("plaintiff") filed a Complaint against Bret's Electric, LLC ("defendant"), raising the following claims for relief: (1) disability discrimination under The Americans with Disabilities Act ("the ADA"); (2) disability discrimination under the Colorado Anti-Discrimination Act ("the CADA"); (3) wrongful discharge in violation of public policy; and (4) intentional infliction of emotional distress. (ECF No. 1 at ¶¶ 24-50.)

On May 18, 2015, defendant filed a partial motion to dismiss the third and fourth claims of the complaint ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), for failure to state a claim. (ECF No. 8.) Plaintiff filed a response in opposition to the motion to dismiss (ECF No. 16), and defendant filed a reply (ECF No. 29). After referral, U.S. Magistrate Judge Kathleen M. Tafoya entered a report and recommendation ("R&R"), recommending that the motion to dismiss be granted in part and denied in part. (ECF Nos. 20, 44.) Both parties then filed

objections to the R&R, as well as responses to the objections. (ECF Nos. 46, 47, 49, 52.) The motion to dismiss and R&R are now before the Court.

## I. Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). In doing so, "a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). In the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955 (2007). A complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Id*. at 569 n.14.

## II. Review of a Magistrate Judge's Report and Recommendation

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation. 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b). The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3). A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made. *See* Fed.R.Civ.P. 72(b)(2), (3). "[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Furthermore, arguments not raised before the magistrate judge need not be considered by this Court. *Marshall v. Chater*, 75 F.3d 1421, 1426

(10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

### III. Factual Background[1]

The Court assumes the following factual allegations from the complaint to be true. Plaintiff worked for defendant as a construction project coordinator from May 2011 until December 2013. (ECF No. 1 at ¶ 6.) In plaintiff's last performance evaluation, on November 11, 2013, she was stated to have met or partially met expectations in every evaluated category. (*Id*. at ¶¶ 9-10.)

Plaintiff suffers from bi-polar disorder. (*Id*. at ¶ 11.) Plaintiff was able to manage her condition by meeting regularly with her doctor. Plaintiff informed defendant of her condition and her need to take time off from work to meet with her doctor. (*Id*.)

On October 22, 2013, plaintiff was involved in a car accident that required her admission into an emergency room. (*Id*. at ¶ 12.) On November 6, 2013, a member of plaintiff's family threatened to kill themself. Plaintiff informed defendant of both of these events. (*Id*.)

On November 18, 2013, one of defendant's owners, Brett Martin ("Brett"), threw papers at plaintiff, telling her to "Take the God damn thing." (*Id*. at ¶ 13.) On November 20, 2013, Brett stood over plaintiff and yelled, hit a wall, and shouted obscenities. (*Id*.) Brett's conduct visibly upset plaintiff, with his conduct on November 20, 2013 causing her to cry. (*Id*. at ¶ 14.) Defendant's other owner, Janet Martin ("Janet"), observed plaintiff's distress, and told plaintiff to go home for the day. (*Id*.)

---

[1] Because the Magistrate Judge failed to set out a statement of facts in the R&R, the Court will do so herein.

On November 22, 2013, plaintiff came to work in tears. (*Id*. at ¶ 15.) Janet told plaintiff she could leave for the day, and plaintiff told Janet that she would be making an appointment to see her doctor as soon as possible. (*Id*.) Plaintiff secured an appointment with her doctor for November 27, 2013, and, the day before the appointment, plaintiff informed Janet about the same and apologized for the short notice. (*Id*. at ¶ 16.) Plaintiff also told Janet that she needed to see the doctor in order to have her medication changed, so she could "get back on track." Janet replied, "No worries. Take the day off." (*Id*.)

On December 2, 2013, plaintiff requested time off for a doctor's appointment on December 18, 2013. (*Id*. at ¶ 17.) On December 3, 2013, Janet denied the request, stating that plaintiff's appointments needed to be scheduled around her work schedule. Plaintiff replied that her request had been made in compliance with defendant's "time-off policy" and that she needed to see her doctor. Plaintiff also told Janet that she would be keeping her appointment. (*Id*.)

On December 4, 2013, Janet wrote up plaintiff for her absences on November 22 and November 27, 2013. (*Id*. at ¶ 18.) Janet stated that, in both instances, plaintiff's absence was unexcused. Janet also stated that the November 27, 2013 absence was not made in writing and was made on short notice. In issuing the "write-ups," Janet did so while another employee was in the room, even though the write-ups implicated plaintiff's confidential medical information. (*Id*.) In response, plaintiff told Janet that defendant was required to accommodate her doctor's appointment under the ADA. (*Id*. at ¶ 20.) Janet replied that work hours were from 7:30 to 4:30 each day, and that plaintiff was required to be at work during those times. (*Id*.)

On December 8, 2013, plaintiff experienced an acute activation of her bi-polar disorder, which resulted in plaintiff being admitted to Highlands Behavioral Health Hospital and placed on

4

a 72-hour suicide watch. (*Id*. at ¶ 21.) That evening, plaintiff's husband called Janet and told her that plaintiff was in the hospital on a 72-hour watch, and that plaintiff would likely return to work later that week. (*Id*. at ¶ 22.)

On December 10, 2013, through its attorney, defendant delivered a letter to plaintiff's home, stating that her employment was terminated. (*Id*. at ¶ 23.) At this time, plaintiff was still in the hospital on a 72-hour watch. (*Id*.)

IV.    Discussion

    A.    **Claim Three—Wrongful Discharge**

Defendant first moved to dismiss plaintiff's third claim for relief. (ECF No. 8 at 2-5.) Plaintiff's third claim is a state law claim for wrongful discharge in violation of public policy, with the public policy being the CADA. (ECF No. 1 at ¶¶ 42-46.) Defendant moved to dismiss this claim on a purely legal ground; specifically, Colorado courts have barred wrongful discharge claims where a statute provides for a wrongful discharge remedy. (*See* ECF No. 8 at 3.) Defendant argued that, because plaintiff's claim was premised on the CADA, and the CADA provides remedies for its violation, the claim was barred. (*Id*. at 4-5.) In response, plaintiff argued that "controlling precedent" from the Colorado Supreme Court defeated defendant's argument because said precedent established that the CADA did not preclude wrongful discharge claims, citing *Brooke v. Rest. Servs., Inc.*, 906 P.2d 66 (Colo. 1995). Plaintiff also cited an opinion from this District, *Kennedy v. Colorado RS, LLC*, 872 F. Supp. 2d 1146 (D. Colo. 2012), in which the court found that the CADA did not bar a claim for wrongful discharge premised on the same statute. (*See id*. at 2-5.) In reply, defendant reiterated its argument, and cited another decision from this District, *Gatuma v. Encore Electric, Inc.*, 2012 WL 5354932 (D. Colo. 2012), in which the court was "unconvinced" that *Brooke*

5

answered whether the CADA preempted claims for wrongful discharge, and found to be more persuasive Colorado cases concluding that the statute did so preempt. *Id*. at *5. In the R&R, the Magistrate Judge found in favor of defendant, agreeing with the reasoning in *Gatuma* that the CADA preempts a wrongful discharge claim. (ECF No. 44 at 6.)

Because plaintiff's wrongful discharge claim is one of state law, this Court must apply "the substantive law of the forum state and reach the same decision … that [the] state's highest could would." *Lytle v. City of Haysville, Kan.*, 138 F.3d 857, 868 (10th Cir. 1998). Thus, the question is whether the Colorado Supreme Court would conclude that the CADA preempts plaintiff's wrongful discharge claim, which is itself premised on the CADA. In her objections, plaintiff contends that the Colorado Supreme Court answered this question in *Brooke* (ECF No. 3-4), while defendant disputes the applicability of *Brooke* to the facts of this case (ECF No. 49 at 4-7).

In *Brooke*, the Colorado Supreme Court was faced with "whether the [CADA] provided the exclusive remedy for the [plaintiff's] tortious interference [with employment] claim." *Brooke*, 906 P.2d at 68. In answering this question, the Colorado Supreme Court arguably answered a much broader question, concluding that the CADA was not the exclusive remedy for claims of employment discrimination covered by the CADA. *See id*. at 68-70 & n.4 (noting that, although the plaintiff's claims involved sex discrimination, its conclusion "would be applicable to the other employment-related discrimination prohibited by the [CADA]," which included handicap, race, creed, color, sex, age, national origin, and ancestry).

The *Brooke* court began by stating that, generally, "federal and state remedies for civil rights violations are cumulative, not exclusive," and, absent a clearly expressed or clearly implied intent, "the creation of a private right of action by state statute does not bar pre-existing common law rights

of action." *Id*. at 68.  As to clear expression, the Colorado Supreme Court found that no provision of the CADA explicitly precluded common law or other statutory claims.  The Colorado Supreme Court then turned to clear implication, concluding that the CADA did not provide a "comprehensive scheme" for addressing discrimination in the workplace, and thus, the legislature had not clearly indicated its intent to preclude common law claims.  *Id*.  Specifically, the Colorado Supreme Court concluded that the CADA was not a "comprehensive scheme" for two principal reasons: first, the CADA did not provide redress for discriminatory conduct that did not effect an employee's pay, status, or tenure; and second, remedies under the CADA for individuals were incidental to the CADA's primary purpose of eliminating employers' discriminatory practices.  *Id*. at 68-69.

After *Brooke*, courts in this District have taken conflicting paths in terms of whether its holding encompasses wrongful discharge claims premised upon the CADA such that those claims are actionable.  Down one path is Judge Daniel's finding in *Kennedy* that, although wrongful discharge claims are generally unavailable in Colorado when premised on a statute that provides a remedy, an exception to the general rule exists for such claims when premised upon the CADA.  *See Kennedy*, 872 F. Supp. 2d at 1149.[2]  In an opposite direction is Judge Krieger's decision in *Endahl v. Vinell Corp.*, 2006 WL 57496 (D. Colo. 2006), and repeated and expanded upon in *Gatuma*, that the CADA bars wrongful discharge claims because the statute contains a wrongful-discharge remedy.  *See Endahl*, 2006 WL 57496, at * 10; *Gatuma*, 2012 WL 5354932, at * 5.  Although this Court takes a different path than those trodden in the above-mentioned decisions, ultimately the

---

[2] Plaintiff cites to other decisions of this Court on the purported basis that they have followed *Kennedy* or at least *Kennedy's* reasoning.  (*See* ECF No. 46 at 5.)  Close examination of those cases, however, reveals that they do not stand for the proposition to which plaintiff cites them.

Court reaches the same end result as the court in *Gatuma*: that a wrongful discharge claim premised upon the CADA is not actionable.

The Court starts by noting the principle expressed in *Brooke* that, if the legislature wishes to bar common law rights of action, it must do so explicitly or by clear implication. *See Brooke*, 906 P.2d at 68. Here, plaintiff's wrongful discharge claim is a common law right of action. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108-112 (Colo. 1992) (acknowledging for the first time a common law right of action for wrongful discharge when such discharge violates public policy).[3] Defendant argues that the decision in *Brooke* is "necessarily limited" to claims of tortious interference with employment because that was the only claim before the Colorado Supreme Court. (ECF No. 49 at 4.) The Court disagrees. Nowhere in *Brooke* does the Colorado Supreme Court limit its holding to purely claims of tortious interference. Rather, the Colorado Supreme Court specifically states that its holding applies to common law sexual harassment claims, and then, by footnote, expands this holding to *all* "other employment-related discrimination prohibited by the [CADA]." *Brooke*, 906 P.2d at 68-70 & n.4. Notably, in the actual analysis part of the Colorado Supreme Court's opinion,[4] the phrase "tortious interference" is mentioned precisely zero times. Thus, this Court is not persuaded at all that the Colorado Supreme Court intended its decision in *Brooke* to be limited purely to tortious interference claims.[5]

---

[3] Defendant argues that a wrongful discharge claim was not a "pre-existing" common law right of action when the CADA was first enacted in 1957. (ECF No. 49 at 7.) The Court discerns no relevance from this argument given that a wrongful discharge claim was pre-existing when the legislature amended the CADA in the years following *Lorenz*.

[4] That is Part II.A. of the opinion.

[5] As such, to the extent the court's decision in *Gatuma* can be construed as finding that *Brooke* was limited to tortious interference claims, this Court disagrees. While the Court notes the court's discussion that claims of tortious interference and wrongful discharge are qualitatively different, as discussed *supra*, the Colorado Supreme Court did not limit its holding to tortious interference claims. In addition, although

Moving on, defendant does not contend that the CADA explicitly bars common law rights of action. (*See generally* ECF Nos. 8, 29.) Thus, the question is whether the CADA clearly implies that common law rights of action are barred. As discussed *supra*, the court in *Brooke* clearly found that they were not. *See Brooke*, 906 P.2d at 68-70. Defendant argues that, since *Brooke*, the CADA has been amended, and thus, at the very least, *Brooke* is not authoritative anymore on whether the CADA impliedly bars common law rights of action. (ECF No. 49 at 6-7.) Given that the CADA has been amended, and amended in a way that ameliorates one of the deficiencies relied upon in *Brooke*, the Court will accept that *Brooke* is not authoritative on this issue. It is, however, still persuasive authority, and the principles it enunciated—specifically, that the legislature must clearly express its intent to bar pre-existing common law rights—remain irrespective of the amendments made to the CADA. Thus, it is this Court's role to predict how the Colorado Supreme Court would resolve this question. *See DP-Tek, Inc. v. AT & T Global Info. Solutions Co.*, 100 F.3d 828, 831 (10th Cir. 1996) ("In the absence of authoritative precedent from the [state's highest court], however, our job is to predict how that court would rule.") (quotation omitted).

---

the Colorado Supreme Court found that the CADA did not provide redress for an employment-related decision that did not affect an employee's pay, status, or tenure, and that lack of a remedy has since been ameliorated, as another court in this District has stated, the Colorado Supreme Court has "not retreated from its conclusion that CADA does not 'indicate a legislative intent to exclusively address the impact of discrimination in the individual claimant.'" *See Alarid v. MacLean Power, LLC*, ___ F. Supp. 3d ___, 2015 WL5444295, at *4 (D. Colo. Sep. 16, 2015) (quoting *Brooke*, 906 P.2d at 69) (discussing the decision in *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1174-75 (Colo. 2000), in which the Colorado Supreme Court reiterated that the CADA was not primarily designed to compensate individual claimants). Finally, the Court disagrees with the statement in *Gatuma* that the Colorado Supreme Court "somewhat understated the comprehensiveness of CADA's enforcement provisions." *Gatuma*, 2012 WL 5354932, at *5 (quotation omitted). In cases such as this with pendent state claims, a court should merely apply the substantive law of the state to those claims. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000). Here, the Colorado Supreme Court has determined that the CADA is not a comprehensive scheme. *Brooke*, 906 P.2d at 68.

On this issue, the Court does not believe that the Colorado Supreme Court would change course from *Brooke* based on the version of the CADA at issue in this case. First, the mere fact that the CADA was amended to make clear that discriminatory harassment of employees was unlawful, something which *Brooke* did not believe to be the case in the version of the CADA at issue in that case, implies nothing with respect to whether the legislature intended the addition of that statutory language to also bar all common law employment discrimination claims, or at least wrongful discharge claims. Nor does the addition of harassment as an unlawful employment practice undermine the second reason for the Colorado Supreme Court believing that the CADA did not provide a comprehensive scheme for addressing discrimination in the workplace; specifically, the CADA's primary goal of eliminating discriminatory practices on a broad scale, rather than on a case-by-case basis. *See Brooke*, 906 P.2d at 69. Notably, the Colorado Supreme Court has continued on its course that the CADA was not intended to exclusively address individual claimants. *See City of Colorado Springs v. Conners*, 993 P.2d 1167, 1174-75 (Colo. 2000) (discussing *Brooke* and the anti-discrimination provisions of the CADA contained in the Colorado Civil Rights Act, and explaining that those provisions were not primarily designed to compensate individual claimants); *see also Alarid v. MacLean Power, LLC*, ___ F. Supp. 3d ___, 2015 WL5444295, at *4 (D. Colo. Sep. 16, 2015) (reaching the same conclusion with respect to a common law claim of negligent supervision). Because defendant points the Court to no other part of the CADA that may indicate the legislature's implied intent to bar common law employment discrimination claims, the Court predicts that the Colorado Supreme Court would reach the same conclusion it reached in *Brooke* with respect to the version of the CADA at issue in this case.[6]

---

[6] The Court notes that the remedy provision of the CADA was substantially altered by the Colorado Legislature in 2013. Among other things, the new provision, Colo. Rev. Stat. § 24-34-405 (2013), allows

This may appear to be a victory for plaintiff because, if the legislature did not intend to bar common claims in the CADA, and her claim for wrongful discharge is a common law claim, then her claim for wrongful discharge should not be barred. This is certainly the position that plaintiff appears to take. (*See generally* ECF Nos. 16, 46.) The Court, however, does not believe this to be the case because plaintiff fails to recognize the entirety of the wrongful discharge claim upon which she relies.

In Colorado, at common law, the general rule was that indefinite employment was terminable at will by either party. *Lorenz*, 823 P.2d at 104-105. An exception to this rule, though, is for employment terminations that violate public policy as expressed in, *inter alia*, statutes. *Id*. at 108-109. Importantly, however, there is an exception to this exception. That is when the public policy being relied upon itself provides a wrongful discharge remedy.[7] In the context of a statute, that basically means that, where the statute provides a wrongful discharge remedy, a claim for wrongful discharge in violation of a statute is not available. *See Gamble v. Levitz Furniture Co. of the Midwest Inc.*, 759 P.2d 761, 766 (Colo. App. 1988). Plaintiff argues, though, that this remedy-already-provided exception does not apply when the statute providing the remedy is the CADA. The Court disagrees.

---

an individual to obtain compensatory and punitive damages, *see id*. § 24-34-405(3). Whether this new provision would result in a change to the Colorado Supreme Court's earlier interpretation of the CADA may be an interesting philosophical question, but that version of the statute is not before the Court. *See id*. § 24-34-405(3)(f) (providing that the remedies specified in the statute apply to causes of action accruing "on or after January 1, 2015."). In any event, even under this new, enhanced remedial provision, this Court doubts whether its prediction of Colorado law would change because the amended provision expressly states that "[n]othing in this section precludes a party from asserting any other available statutory or common law claims." *See id*. § 24-34-405(7).

[7] For ease of reference, the Court will call this the "remedy-already-provided exception."

In support of her argument, plaintiff cites *Kennedy*. In *Kennedy*, the court found that "wrongful discharge claims premised on the CADA are an exception to the [remedy-already-provided exception]." 872 F. Supp. 2d at 1149 (citing *Brooke*, 906 P.2d at 70). The court in *Kennedy* also stated that *Brooke* "clearly addressed" whether a wrongful discharge claim can be premised on the CADA, finding that it could. 872 F. Supp. 2d at 1149. This Court can see no such clear addressing of the issue in *Brooke*. Notably, the only time that wrongful discharge is discussed in *Brooke* is in the recitation of the procedural background, noting that the dismissal of such a claim was not challenged on appeal. *See Brooke*, 906 P.2d at 67. Moreover, the part of *Brooke* to which the court in *Kennedy* cites states, in pertinent part, that the CADA does not explicitly bar non-CADA claims, does not provide a comprehensive scheme for addressing workplace discrimination, and that the Colorado Supreme Court could not conclude that the legislature intended to preempt "the remedies that are otherwise available to victims of sexually discriminatory conduct in the work place." *Brooke*, 906 P.2d at 70. Given that this part of the opinion does not expressly mention claims of wrongful discharge, the Court cannot discern how the Colorado Supreme Court clearly addressed an issue involving such claims.

Nonetheless, the Court does believe that, from the phrase "remedies that are otherwise available," it can be *inferred* that the Colorado Supreme Court meant wrongful discharge claims, given that such claims were otherwise available to employees at the time. However, this does not help plaintiff because, although a wrongful discharge remedy was and is available to plaintiff, that remedy can only be available if plaintiff shows her entitlement to it. Here, plaintiff cannot do so to the extent that her claim is premised on defendant's violation of a statutory duty because the CADA provides for a wrongful discharge remedy. *See* Colo. Rev. Stat. § 24-34-405 (1989) (providing for,

*inter alia*, back pay and reinstatement). This is entirely consistent with the Colorado Supreme Court's holding that the CADA does not preempt otherwise available remedies. Here, it is not *the CADA* preempting plaintiff's wrongful discharge claim, rather, the wrongful discharge claim itself, or, more accurately, the remedy-already-provided exception is getting in the way. The fact that the statute in question happens to be the CADA does not mean that the CADA is preempting plaintiff's claim, at least not to the extent that this Court reads the opinion in *Brooke*. Put more simply, plaintiff's common law remedy for wrongful discharge in violation of public policy is not "otherwise available" pursuant to Colorado law. *See Gamble*, 759 P.2d at 766. For it to be available, the Court would need to graft a *third* exception onto the general rule that, in Colorado, indefinite employment is terminable at will. With nothing *expressly* supporting such an exception, including no case law from the courts of Colorado, it is not this Court's role to predict such an outcome. *See DP-Tek*, 100 F.3d at 831 (explaining that, in predicting state law, a court may look to: lower state court decisions and state Supreme Court dicta; any lower court ruling in the case; the general rule on the issue; the rule in other states; and other legal sources).

This, however, does not end the Court's inquiry because, although not addressed by the parties, an interesting facet to the remedy-already-provided exception has developed in Colorado case law. Notably, the Colorado Court of Appeals has found that, even when a wrongful discharge claim may be premised on a statutory public policy, the claim is not necessarily unavailable. For example, in *Hoyt v. Target Stores*, 981 P.2d 188, 192-193 (Colo. App. 1998), the court distinguished *Gamble* on the ground that, in *Gamble*, the statutory violation concerned "an employer's own alleged statutory violation," whereas the violation in *Hoyt* concerned an employee's pursuit of a statutory right. *See also Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372 (Colo. App. 1989) (distinguishing

13

*Gamble* on the same grounds). The court, thus, rejected the defendant's argument that the statute in question limited the plaintiff's remedies, given that the plaintiff presented evidence that she had pursued "an important work-related right based on a Colorado statute." *Hoyt*, 981 P.2d at 193.

In this light, in Colorado, there appears to be a difference between wrongful discharge claims premised on an *employer's* violation of a statute and an *employee's* exercise or pursuit of a statutory right, with only those claims premised on the former being unavailable. As noted *supra*, the parties do not address this divergence in the remedy-already-provided exception, and thus, the Court does not have the benefit of argument as to whether plaintiff's wrongful-discharge claim is premised on *defendant's* alleged violation of a statutory duty or *plaintiff's* alleged exercise of a statutory right. Arguably, the claim could be seen as identical to the one brought in *Gamble* as, in that case, the plaintiff premised her claim on the CADA. *See Gamble*, 759 P.2d at 763, 766. That is essentially the underlying argument running through the part of the motion to dismiss related to this issue. (*See* ECF No. 8 at 3-5.) However, in the complaint, plaintiff alleges that she "exercised important job related rights by requesting time off to visit her doctor, by taking intermittent and short-term medical leave, and by invoking her statutory right to reasonable accommodation." (ECF No. 1 at ¶ 42.)

Without the benefit of argument as to whether plaintiff did in fact exercise these rights, and, if she did, whether they constitute the pursuit of statutory rights as in *Hoyt* and *Lathrop*, or whether the rights pursued involve a matter of public policy, *see Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 552 (Colo. 1997) (explaining that "public policy 'must concern behavior that truly impacts the public in order to justify interference into an employer's business decisions.'") (quoting *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 525 (Colo. 1996)), the Court is not prepared to grant the motion to dismiss as to the wrongful discharge claim (Claim Three) at this

juncture. As a result, plaintiff's objection (ECF No. 46) is SUSTAINED, the R&R with respect to the wrongful discharge claim is REJECTED, and the motion to dismiss as to that claim is DENIED.

### B.  Claim Four—Intentional Infliction of Emotional Distress

The parties agree that, in Colorado, a claim for intentional infliction of emotional distress requires a showing of, *inter alia*, extreme and outrageous conduct. (*See* ECF No. 8 at 5; ECF No. 16 at 5.) This is the only element of Claim Four that defendant challenges in its motion to dismiss. (ECF No. 8 at 5-8.) The parties further agree that termination of employment *alone* cannot establish this element, but the claim can exist in the employment context. (*See* ECF No. 8 at 6; ECF No. 16 at 5.) In the motion to dismiss, defendant argued that plaintiff's allegations of being disciplined for visiting her doctor and taking leave, terminating her while she was in hospital on suicide watch, and yelling at her, did not rise to the level of outrageousness needed in Colorado. (ECF No. 8 at 7-8.) In response, plaintiff argued that her allegations were sufficient because they involved conduct that was part of a pattern, the individuals engaging in the conduct were in a position of power, and defendant knew about her emotional vulnerability. (ECF No. 16 at 6-8.) In reply, for the first time, defendant argued that most of the conduct alleged as being outrageous should not be considered because it was "based on the same or similar conduct as a separate discrimination claim," and the remaining allegations were insufficient to state a claim. (ECF No. 29 at 11-15.) In the R&R, the Magistrate Judge found that, based upon all of plaintiff's allegations, a reasonable person could conclude that defendant's conduct exceeded the bounds of decency. (ECF No. 44 at 8.) Defendant objects to this finding for the same reasons articulated in its reply. (*See* ECF No. 47.)

Here, defendant's objections have no merit. First is defendant's objection that the Magistrate Judge should not have considered the majority of plaintiff's allegations; specifically, her allegations

15

that plaintiff was disciplined for visiting her doctor and taking medical leave; and plaintiff was terminated while in hospital on suicide watch. (ECF No. 47 at 5-6.) Defendant asserts that these allegations should not be considered because they form the basis of plaintiff's discrimination claims, citing *Visor v. Sprint/United Mgmt. Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) (ECF No. 47 at 5-6), which itself relies upon *Gard v. Teletronics Pacing Sys., Inc.*, 859 F. Supp. 1349 (D. Colo. 1994).[8]

In *Gard*, the court dismissed the plaintiff's claim for outrageous conduct because "the facts necessary to prove that claim cannot be similar or identical to, nor can they be said to share a common nucleus of operative facts with, the federal statutory claims over which [the court has] original jurisdiction." 859 F. Supp. at 1354. The court reasoned that this was so because a claim for outrageous conduct is "not some sort of froth to be lathered over other claims," and such conduct must consist of an extreme act or a pattern of conduct calculated to inflict severe mental suffering. *Id*. Although this Court agrees with the latter contention—that, in Colorado, outrageous conduct must be so extreme that it goes beyond all bounds of decency, *see Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988)—to the extent that *Gard* can be construed as eliminating facts that pertain to the manner of defendant's alleged discriminatory conduct or the manner in which plaintiff was discharged, it is not consistent with Tenth Circuit precedent.

In *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381 (10th Cir. 1988), the Tenth Circuit Court of Appeals explained that, although an employer is not shielded from outrageous conduct claims, its alleged conduct and/or the manner in which it allegedly discharged an employee must be "truly outrageous." *Id*. at 384. The Tenth Circuit further concluded that "a *bare* age discrimination

---

[8] Defendant also cites two other cases from this District (ECF No. 47 at 5), but they also rely upon *Gard* for the proposition that factual allegations for outrageous conduct claims cannot be similar to facts used to support federal discrimination claims.

claim will not support a claim for intentional infliction of emotional distress under Colorado law." *Id*. at 386 (emphasis added). Instead, the "critical" focus of this inquiry looks to "the *manner* of the discharge, and the employer's conduct." *Id*. at 385 (emphasis in original). This Court does not read these conclusions as prohibiting *all* outrageous conduct claims that involve discrimination, but merely those claims that rely *solely* upon the fact of a discriminatory termination to establish an employer's outrageous conduct. As the Tenth Circuit observed, to allow a discriminatory termination alone to constitute outrageous conduct would transform "every discrimination claim—based on age, race, national origin, or sex—[to] also state a claim for outrageous conduct." *Id*. In other words, to allow that would be the "lather[ ]" that the court in *Gard* spoke about. But that does not mean that facts related to the manner of the termination or the manner of a defendant's other conduct prior to and following the termination can not be considered in determining whether that conduct is outrageous. Rather, that is precisely what the Tenth Circuit directs a court to do. *See Grandchamp*, 854 F.2d at 385. Thus, given that defendant relies on *Gard* for the purpose of excluding facts related to the manner of its conduct and its dismissal of plaintiff, the Court rejects that argument as inconsistent with Circuit precedent.[9]

---

[9] The Court also notes with respect to *Gard* that the dismissal of the outrageous conduct claim in that case was for a procedurally different reason than the one before the Court. In *Gard*, the defendant moved to dismiss all state law claims for lack of supplemental jurisdiction on the ground that the claims did not stem from a common nucleus of facts with the plaintiff's federal claims. 859 F. Supp. at 1350-51. The court denied the motion in all respects, except for the outrageous conduct claim because that claim could not "by definition" share a common nucleus of facts with the plaintiff's federal claims. *Id*. at 1351, 1354. Here, the Court is not faced with a motion to dismiss for lack of supplemental jurisdiction, and, even if the reasoning in *Gard* could carry over to dismissing a claim on Rule 12(b)(6) grounds, the Court would not be inclined to do so for the reasons discussed herein. In addition, to the extent that defendant believes that *Gard* stands for the proposition that no facts related to acts of federally discriminatory conduct can support an outrageous conduct claim, this Court disagrees. If the manner of the discriminatory conduct is so extreme as to constitute outrageous conduct in Colorado, there is no reason why that conduct should not also be relied upon to support a federal discrimination claim, or vice versa. If the manner of a defendant's conduct is so extreme as to subject it to more than one cause of action, that is more likely merely a reflection of the outrageousness of the conduct itself. *See, e.g., Gwin v. Chesrown Chevrolet, Inc.*, 931

This leads to defendant's second objection: that the Magistrate Judge erred in finding that its alleged conduct was sufficiently outrageous to set forth an outrageous conduct claim. (ECF No. 47 at 6-10.) The Court finds the following alleged facts the most pertinent to this claim: (1) on December 8, 2013, plaintiff suffered a reactivation of her bi-polar disorder that required her to be admitted to hospital and placed on a 72-hour suicide watch; (2) plaintiff's husband informed Janet that plaintiff was in hospital and on suicide watch; (3) an attorney for defendant delivered a letter to plaintiff's home, terminating her employment; and (4) preceding plaintiff's termination, (a) plaintiff had informed defendant of her bi-polar disorder and her need to take time off to visit her doctor, (b) she had sought leave to visit her doctor, and while one visit had initially been approved, the same visit was subsequently written up as an unexcused absence and another visit was denied, and (c) Brett stood over plaintiff, yelling at her, hitting a wall, and shouting obscenities. (*See* ECF No. 1 at ¶¶ 11, 13, 16-19, 21-23.)

In Colorado, outrageous conduct occurs when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another…." *Churchey*, 759 P.2d at 1350 (quotation omitted). The Colorado Supreme Court has explained that this requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation omitted). Put another way, the conduct must lead "an average member of the community … to exclaim, 'Outrageous!'" *Id.* (quotation omitted).

At this stage of the case, where plaintiff's factual allegations must be accepted as true and all reasonable inferences therefrom must be construed in plaintiff's favor, *see Brokers' Choice*, 757

---

P.2d 466, 468-469 (Colo. App. 1996) (affirming verdicts finding liability on three discrimination claims and a claim for outrageous conduct).

F.3d at 1135-36; *Mink*, 613 F.3d at 1000, the Court is unprepared to find that plaintiff has failed to set forth a cognizable claim for outrageous conduct. Most notably, it can be construed and reasonably inferred from plaintiff's allegations that, while plaintiff was lying in a hospital bed after suffering a severe bi-polar episode and under a suicide watch, defendant, knowing of plaintiff's compromised circumstances, took the opportunity to terminate plaintiff's employment because it was upset with her for taking time off from work to visit her doctor. So construed, the Court can find that average members of the community would believe such conduct to be "Outrageous!" *See Churchey*, 759 P.2d at 1350; *see also Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982) (reversing grant of summary judgment as to a claim of outrageous conduct because reasonable persons could differ whether the totality of the defendants' conduct was outrageous where, *inter alia*, the defendants may have abused a position of authority over the plaintiff and knew that the plaintiff was "peculiarly susceptible to emotional distress by reason of some physical or mental condition"). Moreover, the Court does not credit defendant's argument that its decision to terminate plaintiff was less outrageous because it delivered the termination letter when plaintiff was not at her home. (*See* ECF No. 47 at 9-10.) An average member of the community could construe this, as defendant asserts in its favor, but the same person could quite easily construe it against defendant as an attempt to terminate plaintiff's employment when she was at her weakest and could not defend herself.

As a result, the Court ADOPTS the recommendation of the Magistrate Judge to deny defendant's motion to dismiss with respect to plaintiff's intentional infliction of emotional distress claim (Claim Four), and REJECTS defendant's objection to the R&R and DENIES the motion to dismiss as to that claim.

**V.    Conclusion**

As set forth herein, the Court:

(1)     SUSTAINS plaintiff's objections to the R&R (ECF No. 46);

(2)     REJECTS defendant's objections to the R&R (ECF No. 47);

(3)     ADOPTS IN PART and REJECTS IN PART the R&R (ECF No. 44); and

(4)     DENIES the motion to dismiss (ECF No. 8) in full.

**SO ORDERED.**

DATED this 29th day of March, 2016.

                              BY THE COURT:

                              _____
                              RAYMOND P. MOORE
                              United States District Judge