IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–00496–RM–KMT

NANCI CHRISTEN-LOPER, a Colorado resident,

    Plaintiff,

v.

BRET'S ELECTRIC, LLC, a Colorado corporation,

    Defendant.

---

## ORDER

---

This matter is before the court on "Defendant's Motion to Amend Answer to Assert an Additional Defense," (Doc. No. 32), to which Plaintiff has responded (Doc. No. 37) and Defendant has replied. (Doc. No. 43.)

## BACKGROUND

Plaintiff filed her complaint on March 9, 2015. (*See generally* Doc. 1 "Comp.") By this action, Plaintiff asserts that Defendant violated the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-301, *et seq.* She also asserts a claim for wrongful discharge in violation of Colorado public policy and intentional infliction of emotional distress. Defendant seeks to add an affirmative defense relative only to Plaintiff's claim for intentional infliction of emotional distress. Therefore, the court will set forth those facts pertinent to this claim.

In her Complaint, Plaintiff sets forth the following allegations: (1) Defendant disciplined her for visiting her doctor (Comp. at 5-6, 9) ; (2) Defendant disciplined her for taking medical leave (*Id* at 5-6, 9); (3) Defendant yelled at her (*Id.* at 4, 9); (4) On November 18, 2013, Bret Martin, one of Defendant's owners, threw papers at Plaintiff, telling her to "take the God damn thing" (*Id.* at 4); (5) On November 20, 2013, Mr. Martin escalated a disagreement with Plaintiff by standing over her and yelling, hitting a wall and shouting obscenities (*Id.* at 4); (6) Defendant engaged in the aforementioned actions knowing that Plaintiff was suffering from bi-polar disorder, had recently been in an automobile accident and had a family member threaten suicide (*Id.* at 3, 7, 9); (7) Defendant terminated her employment when she was in the hospital on suicide watch by having its attorney deliver a termination letter to her home (*Id.* at 6-7, 9).[1] By this motion, Defendant seeks to assert the defense that the Colorado Worker's Compensation Act is Plaintiff's exclusive remedy for her intentional infliction of emotional distress claim.

## ANALYSIS

**A. Fed. R. Civ. P. 16**

The Scheduling Order entered in this case set a deadline of August 3, 2015 for the parties to amend pleadings. (Doc. No. 14 at 13.) Defendant did not file its request to amend until December 3, 2015, but contends it did not learn of the basis for the Worker's Compensation Act defense until he received certain of Plaintiff's discovery responses and took Plaintiff's deposition in October 2015. Because Defendant filed its motion after the deadline, the court employs a two-step analysis, first determining whether Defendant has shown good cause to modify the

---

[1] The court notes that in response to Defendant's Motion to Dismiss, Plaintiff also relied upon each of these allegations as supporting her intentional infliction of emotional distress claim. (Doc. No. 16 at 7-8.)

scheduling order under Federal Rule of Civil Procedure 16(b), and then evaluating whether Defendant has satisfied the standard for amendment of pleadings under Federal Rule of Civil Procedure 15(a).[2] This court has stated:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.

*Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations and internal quotations omitted).

Plaintiff does not challenge Defendant's stated good cause for the late nature of its request to amend its pleading. Thus, the court finds Defendant has shown good cause to amend the scheduling order and request to amend its pleading.

**B.  Fed. R. Civ. P. 15**

Once Defendant has shown good cause for modifying the scheduling order, it must also satisfy the requirements of Rule 15(a) for amending the pleadings. Under Rule 15(a), a court

---

[2] The court employs this two-step analysis, notwithstanding the fact that the Tenth Circuit "has not yet decided whether a party seeking to amend its pleadings after the scheduling order deadline must show 'good cause' for the amendment under Rule 16(b) in addition to the Rule 15(a) requirements." *Strope v. Collins*, 315 F. App'x 57, 62 n.4 (10th Cir. 2009) (internal quotation omitted); *cf. Bylin v. Billings*, 568 F.3d 1224, 1231 n.9 (10th Cir. 2009) (acknowledging that "[m]ost circuits have held that when a party amends a pleading after a deadline set by a scheduling order, Rule 16 and its 'good cause' standard are implicated.") (collecting cases); *Minter v. Prim Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (citing *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir. 1990)) (explaining that the Tenth Circuit "adopted a similar interpretation of Rule 16(b)'s 'good cause' requirement in the context of counterclaims asserted after the scheduling order deadline, but has not yet done so in the context of an amendment to the complaint").

should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). However, "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action." *Minter,* 451 F.3d at 1205.

Plaintiff's only argument against Defendant's request to add this defense is based upon futility. (*See generally* Doc. No. 37.) The applicable standard for assessing the futility of a proposed amendment is not entirely settled. Defendant cites to case law indicating that a proposed amendment should be considered futile when it would not withstand a motion to dismiss. (Doc. No. 43 at 2) (citing *Corp. Stock Transfer, Inc. v. AE Biofuels, Inc.*, 663 F. Supp. 2d 1056, 1061 (D. Colo. 2009)). The Tenth Circuit has indicated that proposed amendments are futile when the amended pleading "would be subject to dismissal for any reason, including that amendment would not survive a motion for summary judgment." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240–41 (10th Cir. 2001). Notwithstanding *Watson,* the Tenth Circuit has at other times indicated that "[t]he futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999). Other courts have attempted to resolve this seeming conflict

by considering the stage of the litigation before deciding which standard to apply. *See Street v. Curry Bd. of Cnty. Comm'rs*, No. Civ. 06–0776 JB/KBM, 2008 WL 2397671, at *13 (D.N.M. Jan. 30, 2008). Nevertheless, the court finds it need not resolve this apparent conflict because, as discussed *infra*, even applying a summary judgment standard, the court finds the proposed amendment is not futile.

Plaintiff relies on *Archer v. Farmer Bros. Co.*, 70 P.3d 495 (Colo. App. 2002) to argue it would be futile to allow Defendant's proposed amendment because the "Colorado Court of Appeals has explicitly held that the [Worker's Compensation] Act provides no defense to an outrageous conduct claim based on the termination of an employee who is on medical leave." (Doc. No. 37 at 1.) In *Archer*, the plaintiff asserted an intentional infliction of emotional distress claim against his employer following his termination. *Id.* at 497-98. According to the decision, the claim was based upon the following facts presented at trial and on appeal, viewed in the light most favorable to the plaintiff:

> Farmer's VP, Henshaw, and Rawson all believed that Archer had suffered a heart attack just five days before the termination and were aware that Archer was out on indefinite sick leave. Although Archer had not missed a day of work in eight years, Henshaw and Rawson both knew he had been absent from work for four days before his termination.
>
> Farmer's VP ordered Archer's termination from employment. When Henshaw initially demurred, Farmer's VP told him, "I don't give a shit if [Archer] is on his deathbed, if I tell you to fire him, that's what you will do, or I'll get somebody who will." Henshaw thereafter carried out his instructions, without inquiring further about the status of Archer's health, evaluating the possible medical consequences of delivering such news while Archer was ill, or discussing alternative means to deliver the news.
>
> Instead, Henshaw and Rawson went in search of Archer, ending up at Archer's mother-in-law's home. In the twenty years Henshaw and Rawson had known Archer, they had never visited him or been invited to his home. Upon arrival at his mother-in-law's home, they entered uninvited.

> Neither Henshaw nor Rawson announced the purpose of their visit or asked about Archer's health. Upon entering the spare bedroom, they found Archer lying in bed, not fully clothed. Without asking Archer whether he was fit to discuss work matters or when he intended to return to work, they peremptorily announced that they had his termination papers, which they needed him to initial.
>
> Archer had a reputation as an accomplished branch manager, was fast approaching retirement, and, even though he was being investigated for alleged misconduct, had no reason to anticipate that he would be fired by Farmer. Consequently, news of his firing came as a shock to him.
>
> Noticeably upset by the incident, Archer demanded that Henshaw and Rawson leave the premises. According to Archer's doctor, Archer's health was in such a delicate condition that the termination incident could have triggered a fatal heart attack. Archer attempted to commit suicide that evening.

*Id.* at 499-500.

In reviewing the precise terms of the Worker's Compensation Act, the court determined that it did not apply to the plaintiff's claim.

> The Act is an employee's exclusive remedy against an employer or coworkers for personal injuries where, as pertinent here, "at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment." Section 8–41–301(1)(b), C.R.S.2001 (emphasis supplied); *see* § 8–41–102, C.R.S.2001 (abolishing causes of action against employer).
>
> * * *
>
> As used in the Act, the phrase "in the course of" refers to the time, place, and circumstances under which a work-related injury occurs. *Horodyskyj v. Karanian, supra*, 32 P.3d at 475. "The 'course of employment' requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job-related functions." *Popovich v. Irlando*, 811 P.2d 379, 383 (Colo.1991) (the exclusivity provision must be strictly limited to injuries sustained where both the tortfeasor and the victim are acting in the course of employment). *See* 1 Larson's Workers' Compensation Law § 12.01, at 12–1 (2000).

*Id.*

Based on the facts alleged, the court determined that the Worker's Compensation Act did not apply because "[a]lthough Henshaw and Rawson were engaged in work-related activity, Archer was not. Inasmuch as he was away from work on approved sick leave, the incident did not occur within the time or space parameters of his employment. Further, when terminated, Archer was not making sales, supervising staff, delivering goods, or attending to any other work-related duty; rather, he was resting in bed, an activity unrelated to his employment." *Id.*

In the present case, Plaintiff argues that the Worker's Compensation Act does not apply to her intentional infliction of emotional distress claim because, like the plaintiff in *Archer*, Plaintiff "was terminated by Defendant when she was on medical leave, recovering from a life-threatening illness. . . . And just as in *Archer*, when she was terminated, she was not involved in any work-related activity." (Doc. No. 37 at 3-4.) As a result, she contends that the amendment would be futile and therefore, Defendant's request should be denied.

However, Plaintiff was clear not only in her Complaint but also in her response to Defendant's motion to dismiss challenging the sufficiency of her claim, that the supporting allegations are not limited to the manner in which her termination occurred but also include various events that occurred during the course of her employment. As previously noted, Plaintiff alleges that, in addition to the events surrounding her termination, Defendant disciplined her for visiting her doctor and for taking medical leave and that Mr. Martin also yelled and cursed at her, and on one occasion, did so while standing over her and hitting a wall above her head and on another, while he threw papers at her. (Comp. at 3-7, 9; *see also* Doc. No. 16 at 7-8.) There are no allegations indicating that these events occurred somewhere other than Defendant's location and during the work day. In other words, these alleged events occurred while the plaintiff was

performing "service arising out of" and "in the course of" her employment, thereby directly implicating the Worker's Compensation Act. Colo. Rev. Stat. § 8-41-301(1)(b).

Plaintiff argues that if *any* of the alleged actions supporting an intentional infliction of emotional distress claim occurs outside of the plaintiff's employment, as contemplated under the Worker's Compensation Act, then the Act does not apply. Specifically, Plaintiff states,

> Plaintiff has explicitly pled that her Outrageous Conduct claim is not confined to 'the time and space parameters of [her] employment.' *Archer*, 70 P.3d at 497-98, but includes actions taken against her when she was not working, i.e. terminating her while she was hospitalized. (Doc. No. 1, Complaint, ¶¶ 21-23).
>
> Because Plaintiff's claim is not constrained to the 'time and place limits' of her employment, *Archer*, 70 P.3d at 497-98, but is based on Defendants' [sic] termination of her when she was away from work and in the hospital, Defendant's proposed defense is contrary to law. *Id.*

(Doc. No. 37 at 4.) Plaintiff's argument in this regard wholly depends on the premise that *Archer* stands for the proposition that if *any* of the alleged conduct supporting an intentional infliction of emotional distress claim occurs outside of the time and space parameters of employment, then the Worker's Compensation Act does not apply. Indeed, with regard to *Archer*, Plaintiff states, "Crucially, in reaching its decision the Court found that, even though some of Defendants' actions were work related (i.e. the plaintiff was investigated while at work, Defendants' employees delivered the termination notice to Plaintiff's home), the claim was not barred by the Act because the entire conduct 'did not occur within the time or space parameters of his employment.' *Id.*" (Doc. No. 37 at 3.) However, the court disagrees with Plaintiff's interpretation of *Archer* and its application to this case.

Though the *Archer* court noted that the plaintiff was being investigated for misconduct, nowhere in the decision does the court indicate this was a factual allegation supporting the claim

8

at issue. Within the recited facts noted above, the court stated, "Archer had a reputation as an accomplished branch manager, was fast approaching retirement, and, even though he was being investigated for alleged misconduct, had no reason to anticipate that he would be fired by Farmer. Consequently, news of his firing came as a shock to him." *Archer*, 70 P.3d at 500. Clearly, the court does not indicate the investigation was part of his claim.

Further, although the *Archer* court does note the fact that the defendants were engaged in employment activities at the time of the termination, the relevant factor in determining the Act did not apply to the plaintiff's claim was that the plaintiff was not engaged in employment activity during the events supporting his claim. *Id.* at 498 ("Although Henshaw and Rawson were engaged in work-related activity, Archer was not. Inasmuch as he was away from work on approved sick leave, the incident did not occur within the time or space parameters of his employment.") By contrast, during at least some of the allegations supporting Plaintiff's claim herein, she was clearly engaged in her employment. While a state court might someday rule that if any events supporting an intentional infliction of emotional distress claim occur while the plaintiff is not engaged in employment then the Act does not apply, Colorado courts have not so held at this time. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000) ("When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state . . . ."). Further, while it is unclear to what extent the Worker's Compensation Act will preclude Plaintiff's claim for intentional infliction of emotional distress, that issue will likely be best resolved through questions of fact rather than law. The court finds Defendant's assertion of the Worker's Compensation Act as the exclusive remedy for Plaintiff's intentional infliction of emotional distress claim is not futile.

Accordingly, it is

**ORDERED** that "Defendant's Motion to Amend Answer to Assert an Additional Defense" (Doc. No. 32) is **GRANTED**.

Dated this 4th day of April, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge